W. H. OARD, EMPLOYEE, RESPONDENT, v. HOPE ENGINEERING CO., EM-PLOYER, MARYLAND CASUALTY COMPANY, INSURER, APPELLANTS. —64 S. W. (2d) 707.

Kansas City Court of Appeals.   November 6, 1933.

*Jones & Van Cleve* for respondent

*James D. Reeves* for appellant.

TRIMBLE, J.—Employer, Hope Engineering Company, and insurer, Maryland Casualty Company, appeal herein from a judgment of the Macon Circuit Court affirming an award of the Workmen's Compensation Commission granting additional compensation on employee, Oard's, application for a rehearing and review based upon a claimed "change in condition for the worse" in the employee. Said employee, Oard, while working for defendant employer, was, on January 16, 1929, engaged in helping to lower a large pipe line, after its joints had been welded together, to its proper place in the ditch prepared for it. The pipe line did not enter nor settle into the ditch properly and said employee was ordered into the ditch to clear its bottom from loose stones, snow and earth deemed to be obstacles preventing the proper settling of the pipe line. While so doing, the heavy line of pipe buckled or bent down in such way as to suddenly fall and rest upon employee's body severely injuring him in his legs, chest, head and spine. It is conceded that the injury arose out of and in the course of his employment.

Application was made to the Commission, and on January 22, 1930, an award for temporary total disability was duly made in employee's favor, fixing compensation at $18.66 per week from the date of the accident for a period of not more than 400 weeks and during the continuance of disability with such rights as employer and insurer had under the law to apply for modification of the award should disability terminate sooner.

Employee, respondent herein, received the payments allowed by the Commission until on or about February 26, 1932, when (as claimed and contended for by appellants), a "Request for Lump Sum Settlement," being Exhibit A, was filed with the Commission, and also a "Final Agreement and Report of Facts" which shows (so appellants contend), an agreement between all parties that employee was to receive a total of 192.14 weeks' compensation at the rate of $18.66 per week, subject to credit for compensation already paid of $2,719.03 leaving a balance of 46.4 weeks or lump sum of $866.30 to be paid by employer and insurer. This so-called lump sum settlement was approved by the Commission on March 1, 1932. (A fuller mention and discussion of all these matters and their effect will be made later on in this opinion.)

The record shows that on March 12, 1932, what appellants claim to be a "Final Report and Receipt for Compensation" was filed with the Commission wherein is a receipt for said $866.30 as the sum paid to the employee.

Thereafter, on October 12, 1932, an "Application for Rehearing and Review" on the ground of a "change in condition" of said employee, signed "W. H. Oard by Mrs. W. H. Oard," was filed with the Commission, and on February 2, 1933, the Commission found for respondent, employee, and awarded him compensation "for per-

manent total disability in the sum of $18.66 per week for 300 weeks, and thereafter the sum of seven dollars per week for life. Each of said payments to begin as of January 16, 1929, and to be payable and be subject to modification and review as provided in said law. Subject to a credit of $3585.33 previously paid employee on account of this injury. Also subject to an attorney's fee in the amount of four dollars per week for 107 weeks payable to Ed. S. Jones, attorney for employee, immediately in a lump sum, the commutable value of same being $416.44.''

Chairman Richardson, of the Commission, dissented from the majority opinion ''for the reason that I find from the evidence that employee's condition has not changed for the worse since the award on agreement dated March 1, 1932. It may be that employee is totally disabled at this time, but absent a showing that there has been a change for the worse no additional compensation can be awarded. [Sei v. A. Guthrie & Co., 50 S. W. (2d) 664.]''

The above mentioned award shows that ''Rulings of Law were made and returned with the award, but they are nowhere shown in appellants' record. As heretofore stated it is from the above mentioned award on ''change of condition'' that appellants have brought their appeal.

In their answer to employee's ''Application for Rehearing and Review,'' appellants stated only two things as matters of defense. 1. They denied ''that the Missouri Workmen's Compensation Commission has jurisdiction to pass upon claimant's application as this matter has been fully adjudicated by an award and agreement issued by the Missouri Workmen's Compensation Commission under date of March 1, 1932, approving and authorizing a lump sum settlement in the amount of $866.30 which has been paid.'' 2. They denied ''that the employee's condition has changed since settlement and the award was made.''

At the hearing before the referee, on the question of a change in employee's condition, and before any evidence was introduced, appellants objected to the taking of any testimony on the ground that the Commission had no jurisdiction for the reason that the case was settled by a ''lump sum settlement approved by the Commission by an award on agreement on March 1, 1932, and the effect of which lump-sum settlement is to close this case conclusively without any right or power in the Missouri Workmen's Compensation Commission to reopen the case on a change of condition.''

To which the attorney for respondent replied: ''It is our contention the settlement made was simply a payment made in a lump-sum award of $18.66 per week for a hundred and ninety-two weeks. That award was just simply paid in a lump sum.''

Evidently the appellants' objection to the taking of any testimony was in effect overruled, though the record shows no formal ruling

on the objection, for said Exhibit A, the "Request for Lump Sum Settlement," was thereupon introduced in evidence. It is on the regular form or blank of the Commission and consists of questions printed in the form with answers to each written in by the one supposed to be the applicant, though the evidence tends to show that the filled-out form was sent to respondent's home and there signed. These questions are numbered consecutively 1 to 23 both inclusive. The first ten of such questions and answers have to do with the names and addresses of the parties, the place and date of the accident, the probable duration of the temporary disability, the nature thereof; and 11, the "Compensation period," the answer to which last was given as from January 17, 1929, to September 28, 1932. We give here the questions deemed to bear on the question now before us.

"12. Weekly compensation payments? $18.66.

"13. Compensation paid to date, and due date of last payment? $2719.03.

"14. Additional lump sum desired to be paid? $18.66 per week for 46.4 weeks.

"15. What part of future liability does lump sum cover? Total.

"16. Names, addresses and ages of persons to whom lump sum is to be paid and amount payable to each? W. H. Oard, Atlanta, Mo. Age 51. Amount $866.30. . . .

"18. Request is hereby made that the compensation due for the above accident be commuted and redeemed by the payment of a lump sum to be fixed by the Commission in accordance with the foregoing statements and as provided in the Missouri Workmen's Compensation Act.

"19. The following are the reasons for said request: We believe if we can rent a farm we will buy stock & try farming as this is about the only things we can do at the present as it will take several years for Mr. Oard to gain health enough to work on public work. With the help of the small boys and his wife they might be able to make a living on a farm.

"20. Date of this request? 2-28-32."

This document was nowhere signed by the employee but signed thus: "Mrs. W. H. Oard."

There was also introduced in evidence a document entitled "Final Report and Receipt for Compensation" which contains a receipt which appears to be a full and final release of everything. (Further mention and discussion of this will be made later.)

In addition to the fact that the "Request for Lump Sum Settlement" was not signed by employee but by his wife, the evidence heard on the matter is to the effect that the papers were sent to respondent's home (by whom they were prepared, or who sent them to him, the record nowhere shows), and he not being able to sign them, his wife "signed the papers herself" and sent them to the Commis-

sion. In a few days' time the papers were sent back for the reason that "they would not accept her name and at that time we had already cashed the check" (presumably the check for $866.30 in payment of the lump sum). "We had received a check and I think it was at the bank cashed, and immediately after that this was sent back and we were standing around the table there at home arguing trying to see who would sign it and sister took the pen and put it in father's hand and signed the paper. But, get me, father did not want to sign it and he could not have signed it without the help of sister and he did not realize what he was signing at the time he signed it. We were afraid that check would be stopped because we had not sent the papers back immediately. We thought the Commissioner or somebody would stop this check, and father did not even realize what he was signing." Evidently the paper or papers first referred to in this evidence was, or were, the "Request for Lump Sum Settlement" and the "Final Agreement and Report of Facts" while the paper last mentioned as having been signed by the sister was the "Final Report and Receipt for Compensation."

We are not inclined to hold the "Lump Sum Request" and the commutation of the weekly payments of $18.66, void on the ground that the request therefor was signed only by "X. Mrs. W. H. Oard" as was the "Final Agreement and Report of Facts" which was signed the same way; and the "Final Report and Receipt for Compensation" was signed not by the respondent, employee, but by his daughter putting a pen in his hand, holding it, thus writing his name when he did not know what he was doing. This for many reasons, among which are: First, there doesn't appear to be anything of the nature of fraud, intentional or otherwise, on the part of the employee's relatives who, apparently, to the knowledge of everybody, acted for him throughout, he not being able to act for himself; next, he received the money on the lump sum commutation, or settlement as appellants choose to call it, and, if the Commission had jurisdiction to make the award on change in condition, which is what this appeal is from, due credit thereon has been given for the amount paid on said "lump sum" commutation.

As we view the matter relied on to deprive the Commission of further jurisdiction, it was not a compromise and final settlement of any and all rights or claims which the injured employee might have under the law. In the first place, the request for the lump sum did not ask for a settlement of all rights of the injured employee but only for the commutation of $18.66 per week for the remaining 46.4 weeks of the 192.14 weeks originally awarded by the Commission which on its face was made "subject to the provisions of said Act (the Compensation Law) and is payable and may be modified as therein provided." It is true, in the "Final Agreement and Report of Facts," a blank furnished by the Commission and applicable to all kinds of situations, there is a statement which reads as follows:

"9. By reason of the foregoing accident, *and as provided in the Missouri Workmen's Compensation Act,* the undersigned employer and for his undersigned insurer hereby agree to furnish and pay to the undersigned employee (or his dependents), and said employee (or his dependents) hereby agrees to accept and receipt for same, in full of all liability under said Act as follows:

. . . . . . .

"11. For permanent Partial Disability, the sum of $18.66 per week for 192.14 weeks.

. . . . . . .

"All of the foregoing is subject to the provisions of said Act and is payable and may be modified as therein provided."

All of which clearly shows that this document applies to the *original* award given by the Commission and not to the award made on rehearing and review in view of a change in condition.

Again, the award on agreement made in approval of the lum sum commutation states on its face that "in accordance with the rights of the parties as given in the Missouri Workmen's Compensation Act," the Commission approves the said agreement, and as of the date of said agreement (for commutation to lump sum) hereby finds and awards . . . as follows:

. . . . . . .

"15. For permanent Partial Disability the sum of $18.66 per week for 192.14 weeks . . . subject to credit in the sum of $2719.03. *Balance of* 46.4 *weeks to be paid in a lump sum of* $866.30."

. . . . . . .

"17. . . . to be payable and be subject to modification and review as provided in said Act."

So that, manifestly, what the Commission approved was *not* the payment of $866.30 in full, final and complete settlement of any and every right and sum which, under said Act, might otherwise become due upon an award made by virtue of a change in condition.

It is true that in the document headed "Final Report and Receipt for Compensation" on a Commission blank filled out by someone not disclosed by the record, and sent by mail (by whom no one knows) but received by respondent's family, who supposed it was sent by the Commission, and who, without counsel, signed it as hereinbefore related, appears the following:

"11. Received of Hope Engineering Co., the sum of Eight Hundred Sixty-six and 30/100 dollars ($866.30) making, with payments previously received, a total of Three Thousand Five Hundred Eighty-five and 33/100 dollars ($3,585.33) in consideration whereof the said employee (or his dependent) hereby releases and discharges Hope Engineering Co. from all liability under the Missouri Workmen's Compensation by reason of said accident, subject to review as provided in said Act."

Strange to say, this document is dated February 26, 1932, the same day the request for lump sum settlement was executed, as well as the other documents in that regard, except the "Final Award on Agreement" made by the Commission approving the commutation to a lump sum of the 46.4 remaining weeks for which the original award was made, which approval was made on March 1, 1932, and in which respondent was wholly without counsel representing him at any time. It seems to us that even though clause No. 11 above quoted does appear in said document entitled "Final Report and Receipt for Compensation" as a full, final and complete receipt for everything, yet it cannot have the effect of changing the nature of what was actually intended by the parties and done by the Commission in its approval of the *commutation* of the original award, into a final, complete and irrevocable settlement of all of employee's rights under the Compensation Law. Certainly, for the proceeding to have had any such effect, it should have been clearly, definitely and explicitly so stated, which was not done, and hence, even if the final receipt does so state, there appears to be no consideration for such an agreement. It was merely a settlement or commutation into one lump sum of the remaining 46.4 weeks yet due under the original award, made without reference to and not in the place of, any other awards which, under the law, might and could be made upon a change of condition. Sections 3333 and 3346, Revised Statutes 1929; 4 Mo. St. Ann., pp. 8267 and 8282, are sections under which a compromise or commutation of the weekly allowance may be made, the former of which says "nor shall the commission approve any settlement which is not in accordance with the rights of the parties as given in this chapter." Clearly the right to a rehearing and review under Sections 3340 to 3347 are rights given by the Compensation Law.

Appellants make the point that this proceeding cannot be entertained by the Commission, nor by the circuit or appellate courts on appeal for the reason that no appeal was taken from the approval of the "lump sum agreement" made by the Commission March 1, 1932; but the fallacy in this point is that the approval of that commutation is treated as if it were a compromise and final settlement of all rights which the employee had under said Compensation Law, which is not the case as heretofore stated.

The case of Brown v. Corn Products Refining Co., 55 S. W. (2d) 706, relied upon by appellants, is not deemed applicable to the facts in this case. That was a case of compromise and settlement of employee's *entire claim for all liability.* As stated by the learned Commissioner who wrote that case, page 709, the record and facts therein "clearly demonstrate that the intent and purpose of the parties and their mutual agreement was to *compromise* and make a *final settlement* of the *liability of the employer,* and that the Com-

244

missioner so understood it at the time." (Italics ours.) Later, on the same page, after stating that the papers were all executed on forms prepared by the commission for use in varying circumstances, but used in that particular case to "carry out the agreement of the parties for a final settlement" the opinion goes on to say, "The request in this case was not for the commuted value of compensation allowed by the commission. It was an application for the approval of the commission of an agreement which the parties had reached for final settlement. It is plain and explicit in its terms, and, in view of the testimony, there can be no doubt as to its meaning."

The facts and circumstances which surround the purpose, extent and subject-matter of the "Lump sum Settlement" in the case at bar, are vastly different. Here, the documents show on their face that the subject-matter of the agreement which the Commission approved was a commutation to a lump sum of $866.30 of the *remaining* weeks of the number that the Commission had awarded in the original hearing, while the agreement approved in the Brown case was a settlement of the claim before the Commission ere the claim had been passed on in any manner, and consequently there was no ground upon which the final settlement and agreement could be regarded as a mere commutation of any weekly allowances into a lump sum, while in the case at bar such fact affirmatively appears. Hence the point made by appellants that the Commission had no jurisdiction to grant a rehearing and review on the ground of a change of condition, because of the so-called lump sum settlement of employee's rights under the law, cannot be upheld.

The same is true of their point that employee before asking for a rehearing, review and award because of a change in condition (authorized by Section 3340, R. S. 1929; Mo. St. Ann., p. 8273), should have included a request, or count so to speak, to set aside the award claimed to be a finality; and the Commission should have heard evidence on that issue, and allowed appellants a chance to have offered evidence in that regard. This again begs the question, if there could be one, for it assumes that the approval of the agreement as, to the "lump sum" and the payment of said $866.30 was a complete and final settlement of all employee's rights, which, we have shown, it was not. Moreover, if it were of that nature, the Commission would have had no more jurisdiction to hear evidence *pro* and *con* on that subject than to entertain this proceeding for review on the ground of change of condition, unless it appeared that the award was complete and a finality but which should be set aside for fraud or mistake. However, it must not be forgotten that the Commission is an informal body whose proceedings the statute says "shall be simple, informal and summary . . . and no defect or irregularity therein shall invalidate the same." [Section 3349, Revised Statutes 1929; 12 Mo. St. Ann., p. 8283.] Besides, the Commission in making its review

award on a change of condition, did not, in fact, go contrary to or destroy its former action in approval of the "lump sum agreement," but treated it according to its real nature, i. e., a commutation into a lump sum of what remained to be paid in the original award. Indeed the award now appealed from *ratified* the commutation award since the last award gives appellants credit for the sum paid on the commuted award, as well as for the weekly sums theretofore paid.

As to the second contention or defense made by appellants, namely, that there was no sufficient competent evidence of a change for the worse in employee's condition to support the additional award, we are constrained to likewise disallow it. We do not feel called upon to set out the evidence on this feature of the case, for, in our view, it strongly and amply shows that the change contemplated by Section 3340, Revised Statutes 1929; 12 Mo. St. Ann., p. 8273, "is a material and substantial change for the worse" and not a mere continuation of incapacity of the same kind and character for which the former award was already made. [Hassell v. C. J. Reineke Lumber Co., 54 S. W. (2d) 758, l. c. 760.] It (the evidence) amply supports the additional award, and, therefore, since the Commission's finding on the facts cannot be questioned by us if there is evidence to support it, we cannot disagree with that finding. This has been so often decided by the adjudicated cases that no citations are needed in support thereof. The evidence shows that since the former award the employee had become progressively and substantially worse; he suffered extreme loss of weight, a very noticeable and distressing loss of mentality as shown in his change of conduct from that of an earnest, humble, patient Christian man to the very opposite, that of a man indulging in vulgarity of speech no matter in whose presence, and regardless of the restraint such presence would ordinarily impose on one in a normal mental condition. He finally manifested a clear change in his habits as well as a total inability to work, and a condition that will ultimately make him a charge on the public unless his friends and relatives come to his support. [State ex rel. v. Haid et al., 61 S. W. (2d) 950, 954.] In the Commission's statement of facts filed after the "Hearing on Change of Condition" it is said, "We find from the evidence that the accident of January 16, 1929, has caused a change in the employee's condition for the worse since the aforesaid award on agreement was issued, and as a result of said accident employee is now permanently and totally disabled and is entitled to compensation as provided in Section 3317, Revised Statutes 1929, etc.

There is, as said before, ample evidence of a change of condition for the worse since the former award. It follows that the judgment of the learned trial court must be affirmed. It is so ordered. All concur.